CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
MAR 0 6 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) Civil Action No. 6:06cv031 |
| | ) |
| SAVOY SENIOR HOUSING | ) |
| CORPORATION, et al. | ) |
| | ) |
| Defendants | ) |

## MEMORANDUM OPINION

This matter is before the court on defendant Jacob A. Frydman's ("Frydman") motion to file a Second Third-Party Complaint. The parties extensively briefed the issue and the court heard oral argument on February 11, 2008. At oral argument, the court indicated that the motion to file a Second Third-Party Complaint would be **DENIED** and that this opinion would follow.

In this case, plaintiff United States alleges that defendants illegally discharged dredged or fill material into waters of the United States without a permit pursuant to Section 404 of the Clean Water Act ("CWA"), 33 U.S.C. § 1344. The United States also alleges that defendants illegally discharged pollutants into waters of the United States without a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, thereby violating Section 301 of the CWA, 33 U.S.C. § 1311. For these violations, the United States seeks civil penalties and injunctive relief. 33 U.S.C. § 1319(b),(d). The alleged violations occurred in connection with the development of a failed retirement community project known as the Liberty Village Site, located at 5700 Candlers Mountain Road in Lynchburg, Virginia.

The Complaint was filed on July 26, 2006, naming Savoy Senior Housing Corporation, Savoy Liberty Village LLC, Jacob A. Frydman, SDB Construction, Inc., Best GC, Inc. (a/k/a Best Grading) and Acres of Virginia, Inc.[1] Best GC and Acres answered in October, 2006, and the Savoy defendants and Frydman filed their Answer on March 13, 2007. On March 27, 2007, the Savoy defendants and Frydman filed a Third-Party Complaint against TRBC Ministries, LLC., a partner in Liberty Village Associates LP. The docket reflects little activity until January 3, 2008, when Frydman filed his motion to file the Second Third-Party Complaint which is the subject of this motion.

## I.

Rule 14 of the Federal Rules of Civil Procedure allows a defending party to implead a third party "who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." Fed. R. Civ. P. 14(a). The defending party must seek leave from the court to serve a third-party complaint if the third-party plaintiff fails to serve the third-party complaint within ten days of serving the original answer. Fed. R. Civ. P. 14(a). The court is afforded broad discretion to dismiss a third-party complaint filed under Rule 14(a). U.S. Commodity Futures Trading Com'n v. Calvary Currencies LLC, 2005 U.S. Dist. Lexis 1538, 2005 WL 263902, *5-8 (D. Md. Feb. 2, 2005).

---

[1] Savoy Liberty Village LLC, Savoy Senior Housing Corporation and SDB Construction, Inc. (hereinafter "the Savoy defendants") are New York or Delaware corporations responsible for the development of the Liberty Village Site and all having a business address of 111 Fulton St., New York, NY 10019. Frydman was an officer of the Savoy defendants. Best GC, Inc. performed construction work on the Liberty Village Site, and Acres of Virginia, Inc. provided design and planning for construction on the Liberty Village Site. See Affidavit of Jacob A. Frydman in Support of Motion to File to Third-Party Complaint ¶¶ 1, 4.

In deciding whether to dismiss a third-party complaint, the court must look to a number of factors. The court should first consider the purpose behind Rule 14, which is to expedite, consolidate and dispose of the rights and liabilities of all interested parties in one suit. See Glens Falls Indem. Co. v. Atl. Bldg. Corp., 199 F.2d 60, 63 (4th Cir. 1952). Accordingly, whether the third-party plaintiff unduly delayed in presenting the motion for leave to the court and whether allowing the amendment would unduly prejudice the non-movant are of paramount concern. See United States v. Maryland Sand, Gravel and Stone Co., 1993 U.S. Dist. LEXIS 17644, 1993 WL 524777, *2 (D. Md. Nov. 29, 1993) (quoting Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987)). Additionally, the motion for leave may be denied if it will "introduce unrelated issues and unduly complicate the original suit." Dishong v. Peabody Corp., 219 F.R.D. 382, 385 (E. D. Va. 2003). "Moreover, a lack of similarity between the issues and evidence required to prove the main and third-party claims may be sufficient to warrant the dismissal of an impleaded party." Id. (Citing Wright & Miller § 1443, at 310; United States Fid. &Guar. Co. v. Perkins, 388 F.2d 771, 773 (10th Cir. 1968)). Further, as the Calvary court explained, "the Advisory Committee Notes to Rule 14 state that 'the court has discretion to strike the third-party claim if it is obviously unmeritorious and can only delay or prejudice the disposition of the plaintiff's claim.'" 2005 U.S. Dist. Lexis at *6 (quoting Fed. R. Civ. P. 14, advisory committee note, 1963 Amendment.) See also Hartford Fire Ins. Co. v. A.J. Cianciulli, Inc., 2002 U.S. Dist. LEXIS 22572, 2002 WL 31654853, at *6-7 (S.D.N.Y. Nov. 21, 2002).

Stated more concisely, the court must look to the delay in presenting the third-party complaint to the court, the prejudice to the non-moving party resulting from the delay, the introduction of unrelated issues, whether the new claims would unduly complicate the original

3

suit, the similarity between the issues and evidence in the original suit and the third-party complaint, and whether the claim is obviously unmeritorious. While the court may look to all or some of these factors, no single factor is dispositive.

## II.

Eighteen months after suit was filed and nearly a year after the first Third-Party Complaint was served, Frydman seeks to assert claims for contribution and negligence in the proposed Second Third-Party Complaint against a host of new defendants. While Frydman asserts that this amendment was prompted by new evidence, no such evidence was detailed in the briefs or identified at the hearing.[2] There is, in short, no justification for the delay in filing the Proposed Second Third-Party Complaint, and its interjection into this lawsuit at this point will unduly increase the cost and further delay this case.

In his First Claim for Relief, Frydman seeks contribution against three entities: Liberty University, Liberty Broadcasting Network, Inc. and Thomas Road Baptist Church; and seven individuals: Lewis T. Falwell, Thomas C. Brooks, Jerry L. Falwell, Jr., Ronald Goodwin, Don Moon, Jonathan Falwell and David Randlett.

---

[2] Frydman, a law school graduate and inactive member of the Ohio bar, also attempts to excuse the delay in filing the Proposed Second Third-Party Complaint due to the untimely death of the lawyer for the Savoy defendants, James McKinnon, on December 12, 2007. See Reply Affidavit of Jacob A. Frydman in Further Support of Motion to File Second Third-Party Complaint at ¶¶ 5-6. However, it does not appear that McKinnon ever represented Frydman. At the time the First Third-Party Complaint was filed, Frydman and the Savoy defendants were represented by Kirkland & Ellis, LLP and Magee, Foster, Goldstein & Sayers, P.C. On August 6, 2007, these lawyers moved for leave to withdraw, attaching a Declaration of Frydman dated July 17, 2007, indicating that he had voluntarily terminated the attorney/client relationship with them and indicates that he intended to represent himself.

4

The contribution claim against the three entities contains no specific factual allegations of any actions or inactions by these entities on or off the Liberty Village Site. Instead, the allegations are vague and conclusory and state only as follows:

> 33. To the extent that there were any violations as alleged by Plaintiff, upon information and belief they were caused by acts engaged in by Liberty University, Liberty Broadcasting Network, Inc. and Thomas Road Baptist Church which impacted the streams and wetlands, if any, on the Site in that they directed and/or instructed persons to conduct activities which impacted streams or waters located upstream of the Site, on property owned by Liberty University, Liberty Broadcasting Network, Inc. and Thomas Road Baptist Church, respectively and/or on the Site. To the extent there has been any damage to the Site as alleged in the Complaint, which is denied, upon information and belief as more fully set forth above, it is inextricably intertwined with, and is in whole or part a result of the acts by Liberty University, Liberty Broadcasting Network, Inc. and Thomas Road Baptist Church and their agents on their own lands and/or on the Site.

Proposed Second Third-Party Complaint at ¶ 33. When asked about the conclusory nature of the allegations against these entities, Frydman stated that he believes that some soil was removed from other construction projects taking place on the site of Liberty University, Liberty Broadcasting Network, Inc., and Thomas Road Baptist Church, and that this soil was hauled or otherwise "migrated" to the Liberty Village Site. There is no allegation in the proposed Second Third-Party Complaint that these entities played any role in the development of the Liberty Village Site, were involved in its development or site construction or, for that matter, so much as turned over one shovel full of dirt there. Absent any further specific allegation of wrongdoing by these entities, there is no basis upon which Frydman can seek to recover from them simply because soil from a construction project at one of these entities was somehow moved to the

5

Liberty Village Site.[3] For example, there are no allegations that the entities from whose land the soil was taken had anything to do with the manner in which the soil was relocated to the Liberty Village Site or where it was put once it got there. Absent some allegation that these three other entities had some control over, or even involvement with, moving, placing or doing anything with the soil at the Liberty Village Site, there can be no fathomable basis for any third-party liability against them for a violation of the CWA on that site. Because the Proposed Second Third-Party Complaint does not state a meritorious claim, allowing it to be filed would be futile.

The allegations as regards the individuals named in the first cause of action are even more attenuated. Frydman seeks to add Lewis T. Falwell, President of defendant Best GC, Inc., and Thomas C. Brooks, President of defendant Acres of Virginia, Inc., but there are no allegations against them which could be construed to impose any individual liability. In fact, the only allegations against these two defendants are that they are the presidents of companies involved in the project and already named as defendants. See Proposed Second Third-Party Complaint at ¶ 8. There is no allegation of any actions or inactions taken by these individuals, nor is there any allegation of any ultra vires conduct on behalf of either Lewis Falwell or Brooks. Likewise, the only allegations against Jerry L. Falwell, Jr., Ronald Godwin, Don Moon, Jonathan Falwell and

---

[3] Likewise, in the Second Claim for Relief, Frydman asserts that Liberty University, Liberty Broadcasting Network, Inc. and Thomas Road Baptist Church "failed to follow adequate procedures and permitted harmful material to migrate from their property to the Site and/or upon the Site itself, and failed to take action to halt or minimize such migration." Proposed Second Third-Party Complaint at ¶ 42. At the hearing, the United States confirmed that there was no toxic or poisonous substance released into the water at the Liberty Village Site, and that the alleged violation of the CWA concerned the soil itself. The second count, as alleged, is entirely vague as to what is meant by the "migration" of "harmful material." Regardless, it is clear from the oral argument that the gravamen of Frydman's theory is that soil from construction projects at these three other entities somehow was used on the Liberty Village Site. As alleged, there does not appear to be anything actionable against entities where the soil formerly had been deposited as alleged in the Second Claim for Relief.

David Randlett, are that they were officers, directors or in some other respect associated with Liberty University, Liberty Broadcasting Network, Inc. or Thomas Road Baptist Church.[4] See Proposed Second Third-Party Complaint at ¶ 10. The lack of any specific allegations of any conduct giving rise to liability as regards any of these individuals, including any allegations supporting a claim for individual liability, combined with the length of time this suit has been pending, supports denial of the motion for leave to amend as regards them.

In the Third Claim for Relief, Frydman alleges that the current owner of the site, Liberty Ridge, LLC, is liable for contribution to him merely because that entity now owns the property. However, the underlying CWA Complaint seeks an injunction against further CWA violations, remediation and civil penalties resulting from the CWA violations engaged in by defendants on the Liberty Village Site. Under Rule 14 of the Federal Rules of Civil Procedure, a defendant may assert a third-party claim against a "nonparty who is or may be liable to it for all or part of the claim against it." Fed. R. Civ. P. 14. Absent the bare allegation of new ownership, there is no allegation in the proposed Second Third-Party Complaint that the new owner has undertaken any actions which could give rise to liability for a violation of the CWA. There is no suggestion that the new owners have moved any soil, failed to correct any ongoing erosion problems or done anything at all except take title to the real estate. Absent a factual allegation coming far closer to meeting the requirement of Rule 14 than is set forth in the Third Claim for Relief, it too cannot proceed.

---

[4] For example, the only mention of David Randlett in the Proposed Second Third-Party Complaint is that he is Senior Associate Pastor of Thomas Road Baptist Church. See Proposed Second Third-Party Complaint at ¶ 10.

7

In the Fourth Claim for Relief, Frydman asserts negligence and culpable conduct against Campbell County in providing permits and approvals for the project and "failing to properly monitor the Site to ensure that the work was in compliance with all laws, rules and regulations." Proposed Second Third-Party Complaint at ¶ 51. Again, however, there is nothing offered by Frydman to excuse its being filed nearly a year after his answer. While no depositions have yet been taken, a detailed scheduling order has been entered in this case and it would likely delay this case even further were this late amendment to be allowed.

In addition, it does not appear that the claim Frydman seeks to assert against Campbell County is appropriately brought as a third-party complaint or is otherwise actionable under Virginia law. See Kohl's Department Suit v. Target Stores, Inc., 214 F.R.D. 406 (E.D. Va. 2003). As explained in Kohl's, a "third party claim is not appropriate where the defendant and putative third-party plaintiff says, in effect, 'It was him, not me,'" quoting Watergate Landmark Condominium Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc., Inc., 117 F.R.D. 576, 578 (E.D. Va. 1987). In that case, the supplier of allegedly substandard fill material used in the foundation for a shopping center development sought to implead the building contractors who constructed the store buildings themselves, contending that it was their faulty construction, rather than deficient fill material, that caused structural damage to the buildings. The Kohl's court determined that the fill supplier's contribution claim could not be brought under Rule 14 because the building contractors could not be liable to the fill supplier for all or part of the claim against him. Similarly, Frydman would have to show that Campbell County could be held liable to him for all or part of the claim asserted against him by the United States.

8

The court is aware of no legal theory under which Campbell County could be held liable for Frydman's alleged violations of the permitting provisions of the CWA. At least one court has previously rejected such a claim, holding that Section 301 of the CWA "does not impose liability on local government officials for a third party's failure to obtain a permit or to comply with the environmental standards set forth in the permit." Love v. New York State Dept. Of Env. Conser., et al., 529 F. Supp. 832, 841 (S.D. N.Y. 1981). The same logic applies here.

Additionally, the Kohl's court determined that the fill supplier could not assert a contribution claim sounding in negligence against the building contractors under Virginia's economic loss rule. Under Virginia law, a plaintiff cannot recover purely economic damages from a defendant unless the plaintiff is in privity of contract with that defendant. Here, too, there is no assertion of privity of contract between Frydman and Campbell County. Because economic losses cannot be recovered in a negligence action in Virginia, Sensenbrenner v. Rust, Orling & Neale, Architects, Inc., 236 Va. 419, 374 S.E.2d 55, 58 (1988); Beard Plumbing and Heating, Inc. v. Thompson Plastics, Inc., 152 F.3d 313, 316 (4th Cir. 1998), this doctrine provides yet another reason why Frydman's request to file the Proposed Second Third-Party claim against Campbell County should be denied.

### III.

Beyond these obvious infirmities, the United States argues that the CWA does not allow a private party such as Frydman to seek contribution for any civil penalties which may be ordered to remediate the CWA violations in this case.

As regards a violation of a federal statute such as the CWA, a right to contribution may arise only "through the affirmative creation of a right of action by Congress, either expressly or

9

by clear implication; or second, through the power of federal courts to fashion a common law right of contribution." Texas Industries, Inc. v. Radcliff Materials, Inc., 451 U.S. 630, 638 (1981). The CWA contains no express provision allowing for contribution, and the federal courts have held that no private remedies should be implied to remedy CWA violations. Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n., 453 U.S. 1, 20 (1981); Fiscella & Fiscella v. United States, 717 F. Supp. 1143, 1146 (E.D. Va. 1989). Federal courts have consistently held that the CWA is an elaborate and all-encompassing program of water pollution regulation that "has occupied the field through the establishment of a comprehensive regulatory program. . . . The establishment of such a self-consciously comprehensive program by Congress . . . strongly suggests that there is no room for courts to attempt to improve on that program with federal common law." Milwaukee v. Illinois, 451 U.S. 304, 317-32 (1981).

Faced with this precedent, Frydman asserts that his claim for contribution against these entities arises under Virginia law, and not federal common law. In response, the United States has cited a host of cases concerning a wide variety of federal statutes which stand for the proposition that where no right to contribution is provided by federal statutory or common law, a party may not engraft a state law contribution claim upon the federal statutory scheme. See Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992) (denying third-party complaint for indemnity allowed under Fair Labor Standards Act, because engrafting such a claim onto a comprehensive federal statute would run afoul of the Supremacy Clause of the Constitution and would undermine employers' incentives to abide by the FLSA.); Mortgages, Inc. v. U.S. Dist. Court for Dist. of Nev. (Las Vegas), 934 F.2d 209, 214 (9th Cir. 1991) ("Because there is no basis in the [False Claims Act] or federal common law to provide a right to contribution or

10

indemnity in a [False Claims Act] action, we conclude that there can be no right to assert state law counterclaims that, if prevailed on, would end in the same result."); Donovan v. Robbins, 752 F.2d 1170, 1179 (7th Cir. 1984) ("Where contribution is sought by one who has had to pay damages for violating a federal statute, the scope and limitations of the right of contribution are invariably treated as questions of federal rather than state law."); Environmental Conservation Org. v. Bagwell, 2005 WL 2465003 (N.D. Tex. Sept. 30, 2005); United States v. Domestic Industries, Inc., 32 F. Supp. 2d 855, 872-73 (E.D. Va. 1999); Lehman Bros., Inc. v. Wu, 294 F. Supp. 2d 504, 505 n.1 (S.D.N.Y. 2003) ("whether contribution is available in connection with a federal statutory scheme is a question governed solely by federal law.") (quoting Johnston v. Smith, 1997 U.S. Dist. LEXIS 20167, 1997 WL 584349 (N.D. Ga. 1997)); Gilmore v. List & Clark Const. Co., 866 F. Supp. 1310, 1312 (D. Kan. 1994) ("The Supreme Court made clear that where Congress has enacted a comprehensive legislative scheme that includes an integrated system of procedures, as with Title VII, courts should not fashion new remedies that might upset carefully considered legislative programs and that it would be improper for us to add a right to contribution to the statutory rights that Congress created.") (internal quotations omitted).

The Bagwell case bears a striking similarity to Frydman's allegations here. In that case, a citizen's suit brought under the CWA, plaintiffs sought a declaratory judgment, injunction and civil penalties against a subdivision developer for failure to adequately manage storm water runoff from the subdivision, resulting in degradation of water and the accumulation of sediment and debris in neighboring ponds. As Frydman seeks to do here, defendant developer brought a third-party complaint against an excavating contractor responsible for paving and sewer improvements in the subdivision asserting negligence and seeking contribution. Citing the Ninth

Case 6:06-cv-00031-NKM   Document 108   Filed 03/06/08   Page 11 of 15   Pageid#: 722

Circuit's Mortgages, Inc. decision, the Bagwell court rejected the developer's claim for indemnification or contribution for CWA civil penalties. In so doing, the Bagwell court noted that the developer was not without recourse under the CWA because a court, in determining the amount of penalties to be awarded under the CWA, is permitted to consider such factors as justice may require, presumably including the respective obligations and conduct of the various parties involved in the development.[5]  2005 WL 2465003.

Likewise, in Domestic Industries, a case decided under the Resource Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6901 et seq., the Eastern District of Virginia granted the motion for summary judgment filed by third-party defendants, holding that federal law did not allow any claim for contribution or indemnity for civil penalties assessed by the court under RCRA. 32 F. Supp. 2d at 870-72. The court relied on the Fourth Circuit's opinion in Lyle, 954 F.2d at 987, which rejected a claim for contribution under the Fair Labor Standards Act ("FLSA"), and the opinions in Furrer v. Brown, 62 F.3d 1092 (8th Cir. 1995), cert. denied, 517 U.S. 1167 (1996), and Davenport v. Neely, 7 F. Supp. 2d 1219 (M.D. Ala. 1998), which rejected claims for contribution for costs of remediation under RCRA. The Domestic Industries court noted that the significance of this case law "is that a court should not impose a remedy where Congress specifically declined to allow the remedy." 32 F. Supp. 2d at 871.

In contrast to the CWA and RCRA, Congress expressly provided for contribution and indemnity under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). See Meghrig v. KFC Western, Inc., 516 U.S. 479, 485 (1996)("Congress thus

---

[5] While granting summary judgment as regards the developer's claim for contribution or indemnity as regards civil penalties, the Bagwell court denied the motion for summary judgment as regards contractual indemnification for costs of remediation under the CWA. In contrast, Frydman has not asserted a claim for contractual indemnification.

12

Case 6:06-cv-00031-NKM    Document 108    Filed 03/06/08    Page 12 of 15    Pageid#: 723

demonstrated in CERLCA that it knew how to provide for the recovery of cleanup costs, and that the language used to define the remedies under RCRA does not provide that remedy."); 42 U.S.C. § 9613(f). The <u>Domestic Industries</u> court concluded that by denying a writ of certiorari in the 8th Circuit's decision in <u>Furrer</u> and by reversing the 9th Circuit's decision in <u>Meghrig</u>, the Court resolved a split in the two circuits and tacitly affirmed the holding in <u>Furrer</u> that under RCRA, a defendant may not seek, "by way of a third party complaint, to collect the costs of remediation from the previous owners and lessees." 32 F. Supp. 2d at 871.

In the face of this comprehensive regulatory scheme, Frydman provides the court with no cases which suggest that a CWA defendant may assert a claim for contribution for civil penalties and injunctive relief brought by the United States. Instead, Frydman argues that his proposed Second Third-Party Complaint is authorized under federal law by virtue of a savings clause in the citizen suit portion of the CWA. See 33 U.S.C. § 1365(e). This savings clause provides that "[n]othing in this section shall restrict any right which any person (or class of persons) may have under any statute or common law to seek enforcement of any effluent standard or limitation or to seek any other relief (including relief against the Administrator or a State agency)." <u>Id.</u> Not only does the savings clause apply on its face to the citizen suit section of the CWA, which is not at issue here, unlike the plain language in CERCLA, the savings clause in the CWA does not purport to authorize contribution or indemnity claims. In <u>Middlesex</u>, 453 U.S. at 15-18 (1981), the Court rejected the argument that this savings clause in the CWA provided an independent remedy for injured parties, holding that:

> Both the structure of the [CWA] and [its] legislative history lead us
> to conclude that Congress intended that private remedies in
> addition to those expressly provided should not be implied.
> Where, as here, Congress has made clear that implied private

13

> actions are not contemplated, the courts are not authorized to ignore this legislative judgment.

453 U.S. at 18. Additionally, nothing in the Bagwell decision suggests that this savings clause creates a right to contribution or indemnity. Likewise, while RCRA contains an identical savings clause in its citizen suit section, 42 U.S.C. § 6972(f), the Domestic Industries court did not find that such a clause authorized third-party claims for contribution or indemnity under RCRA. Frydman cites no authority holding that the savings clause in the citizen suit provision of the CWA operates to authorize a third-party contribution claim under the CWA, and the court finds his argument to be without merit.

Frydman argues on brief that the Fourth Circuit's opinion in Stoddard v. Western Carolina Reg'l Sewer Auth., 784 F.2d 1200 (4th Cir. 1986), supports his argument that he should be allowed to pursue contribution under state law for civil penalties or remediation costs imposed in this suit. When properly analyzed, however, Stoddard does not support Frydman's argument. In Stoddard, the Fourth Circuit recognized that the CWA allows state regulation of pollution so long as the state standards are not less stringent than those set forth under the CWA. 784 F.2d at 1207; see 33 U.S.C. § 1370. The court also noted that South Carolina specifically preserved remedies other than those provided by the state statute in its own "savings clause" which is "much broader and stronger than the parallel federal provision," id., and, as such, authorized an award of just compensation for taking of private property under the South Carolina Constitution. This award and the statutory scheme before the court in Stoddard bears no relation to the common law contribution claim asserted by Frydman in this case.

## CONCLUSION

Frydman's proposed Second Third-Party Complaint comes too late, lacks sufficient allegations of wrongdoing against any of the twelve new parties it seeks to add and seeks contribution for civil penalties and remediation costs imposed under the CWA which Congress did not authorize and the law does not otherwise allow. The prejudice associated with bringing in twelve new parties into this lawsuit on meritless claims is manifest.

For these reasons, given the late filing of this Proposed Second Third-Party Complaint and the lack of merit of the claims asserted therein, the motion for leave to file is **DENIED**.

Enter this 6th day of March, 2008.

Michael F. Urbanski
United States Magistrate Judge

15