CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

OCT 07 2008

JOHN F. CORCORAN, CLERK
BY: [signature]
DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
LYNCHBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff,* v. SAVOY SENIOR HOUSING CORPORATION, ET AL., *Defendants.* | CIVIL NO. 6:06cv00031 <br> MEMORANDUM OPINION <br> JUDGE NORMAN K. MOON |

This matter is before the Court on third-party defendant's, TRBC Ministries LLC ("TRBC"), motion for summary judgment [docket no. 152]. In March 2007, Savoy Senior Housing Corporation, Savoy Liberty Village LLC, Jacob A. Frydman, and SDB Construction, Inc. (collectively the "Savoy Defendants") filed a third-party complaint against TRBC [docket no. 42]. The complaint seeks to hold TRBC primarily liable for any violation of the Clean Water Act, seeks contribution, and claims that TRBC negligently harmed the subject site. TRBC answered the complaint, denying all liability. After discovery, TRBC filed the instant motion for summary judgment. A hearing on the motion was held on September 25, 2008. For the reasons that follow, the Court will grant TRBC's motion for summary judgment.

## I. BACKGROUND

The United States filed a complaint against the Savoy Defendants and two other corporate entities[1] in July 2006, alleging violations of the Clean Water Act and seeking a civil penalty and injunctive relief. The Clean Water Act violations allegedly occurred during the

[1] Those entities, Best GC, Inc. and Acres of Virginia, Inc., are not parties to the third-party complaint or this motion for summary judgment.

course of construction at the Liberty Village Site ("the Site"), which began in 2001. The government alleges that the defendants discharged sediment, dirt, sand, and/or rocks, which are considered pollutants under the Clean Water Act, into waters of the United States without a permit or in violation of a permit. The Savoy Defendants deny that there was a violation, and if there was a violation, deny all responsibility for it.

The Site was owned and developed by Liberty Village Associates LP. Defendants Savoy Senior Housing Corporation ("SSHC") and Savoy Liberty Village LLC ("SLV") were two of the three partners that formed Liberty Village Associates; Jonathan Frydman was an officer of both entities. The third partner was TRBC, who also owned a parcel of land adjacent to the Site. The project to develop the Site failed, and in 2004, Liberty Village Associates filed for bankruptcy.

According to the Partnership Agreement, which was first executed on December 1, 1999, TRBC had a 10% interest in the partnership, SSHC had a 1% interest, and SLV had an 89% interest. TRBC and SLV were limited partners, and SSHC was the general partner. The 1999 Partnership Agreement was superseded by a second agreement dated April 14, 2000. The only relevant difference in the agreements is that the first agreement contained an indemnification clause, while the later agreement did not. The later agreement specifically stated that it superseded any previous agreements. Both agreements provided that TRBC was not to take part in the management of the partnership or to transact any business of the partnership. TRBC's only duties were to assist SSHC in obtaining any governmental approvals and permits for the project that might be required, and to market and advertise the project.

In a separate agreement, TRBC also contracted with SSHC to provide fill material for use on the Site during the course of construction. TRBC contends that it had no involvement with

placing the fill on the Site; the Savoy Defendants have not offered any evidence to the contrary. TRBC also owned a parcel of land adjacent to the Site for a period of time, but sold that property in February 2002.

## II. STANDARD OF REVIEW

A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As to materiality . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In order to preclude summary judgment, the dispute about a material fact must be "'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* However, if the evidence of a material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Id.* at 250.

In considering a motion for summary judgment under Rule 56, the court must view the record as a whole and draw reasonable inferences in the light most favorable to the nonmoving party. *See, e.g.*, *id.* at 248–50 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986); *In re Apex Express Corp.*, 190 F.3d 624, 633 (4th Cir.1999).

If the nonmoving party bears the burden of proof, "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. If the moving party shows such an absence of evidence, the burden shifts to the nonmoving party to set forth specific facts illustrating genuine issues for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at

324.

A court should grant a motion for summary judgment if, after adequate time for discovery, the nonmoving party fails to make a showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. The nonmoving party "may not rely merely on allegations or denials in its own pleading; rather, its response must—by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Indeed, the nonmoving party cannot defeat a properly supported motion for summary judgment with mere conjecture and speculation. *Glover v. Oppleman*, 178 F. Supp. 2d 622, 631 (W.D. Va. 2001) ("Mere speculation by the non-movant cannot create a genuine issue of material fact."). The trial judge has an "affirmative obligation" to "prevent 'factually unsupported claims and defenses' from proceeding to trial." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987) (quoting *Celotex*, 477 U.S. at 317).

## III. DISCUSSION

The Savoy Defendants bring three claims against TRBC: contribution, primary liability, and negligent harm to property. All of these claims are premised on the Savoy Defendants' allegations that: (1) TRBC provided fill material to the Site and directed the delivery of fill to the Site, and that fill is ultimately what resulted in the alleged Clean Water Act violations; (2) TRBC conducted development activity on a parcel of land adjacent to the Site, which resulted in the alleged Clean Water Act violations; and (3) TRBC is liable as a result of its contractual obligations as a limited partner in Liberty Village Associates. Throughout this litigation, the Savoy Defendants have continually denied any liability in this matter, and have continually denied that a Clean Water Act violation occurred at all.

The Savoy Defendants' allegations in its third-party complaint with regard to TRBC's liability are entirely conclusory and contain no specific facts such as names, dates, places, or descriptions. In addition, the Savoy Defendants did not produce any evidence to support their claims in response to TRBC's motion for summary judgment: they submitted no affidavits, documents, declarations, depositions, or other evidence.[2] TRBC, on the other hand, did submit evidence with its motion for summary judgment, in the form of a declaration, letters, various other documents, responses to interrogatories and requests for admissions, and excerpts from the deposition of Defendant Frydman.

The undisputed evidence submitted by TRBC fully supports its denial of any responsibility for the alleged Clean Water Act violations at the Site. That evidence shows that, while TRBC did contract with the Savoy Defendants to provide fill material for use at the Site, TRBC was not in any way responsible for moving the fill to the Site or placing the fill at the Site. (Def.'s Mem. Supp. Summ. J., Ex. B at ¶ 13-14.) Various maps and plans of the Site and TRBC's adjacent property, submitted by TRBC, also show that there are no waterways linking TRBC's adjacent parcel of property to the Site, and therefore, it would have been impossible for TRBC's activities on the adjacent parcel to impact any wetlands at the Site. (Def.'s Mem. Supp. Mot. Summ. J., Ex. C4, Ex. D.) Further, TRBC offered evidence that it did not in fact conduct any activities on the adjacent parcel that could have impacted the Site. (Def.'s Mem. Supp. Mot. Summ. J., Ex. B at ¶ 15-18.) This evidence establishes that TRBC was not responsible for the filling of wetlands that resulted in the alleged Clean Water Act violations.

[2] At the hearing on the motion, Mr. Frydman, arguing on his own behalf, suggested that the Savoy Defendants' failed to produce any evidence in support of its allegations because discovery was not yet complete. The Court inquired of Mr. Frydman whether he was familiar with the procedural rules surrounding a motion for summary judgment, in particular Fed.R.Civ.P. 56(f). Mr. Frydman indicated that he was, and offered no explanation for his failure to file a motion pursuant to Rule 56(f). Further, the docket indicates that on May 1, 2008, the Savoy Defendants noticed a deposition of TRBC, which was to take place on May 8, 2008 (docket no. 125). Mr. Frydman offered no examples of what additional discovery was necessary.

Finally, the Partnership Agreement itself does not support the Savoy Defendants' claims. The Partnership Agreement provides that "TRBC shall ***assist*** Savoy in obtaining all necessary governmental approvals and permits for the construction of the Project…." (Def.'s Mem. Supp. Mot. Summ. J. Ex. B1 at 22) (emphasis added.) The Savoy Defendants argue that this clause obligated TRBC to obtain any environmental permits that may have been necessary. However, the plain language of the agreement makes it clear that TRBC's only obligation was to assist the Savoy Defendants in obtaining such permits. The Savoy Defendants produced no evidence that they ever requested TRBC's assistance in obtaining environmental permits, or that TRBC failed or refused to assist them in that matter.

As a result, the Savoy Defendants have not demonstrated that there is a "genuine issue as to any material fact," and for this reason, TRBC's motion for summary judgment should be granted as to all counts.

**IV. CONCLUSION**

For the reasons stated herein, the Court will grant the instant Motion (docket no. 152). An appropriate Order will follow.

The Clerk of the Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record

ENTERED: This 7th Day of October, 2008

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE